**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENWOOD DIVISION**

| | | |
|---|---|---|
| Pernanza Hill, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 8:06-CV-1010-GRA |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | (Written Opinion) |
| USA Truck, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    This matter comes before the Court on Defendant's Motion for Judgment as a Matter of Law and Defendant's Motion for New Trial. For the reasons set forth herein, the Court DENIES both motions.

<u>**Factual Background**</u>

    Plaintiff Pernanza Hill filed the instant lawsuit on March 2, 2006 in the Edgefield County Court of Common Pleas. Plaintiff alleged personal injuries stemming from a collision between his bicycle and a tractor trailer truck driven by an employee of the defendant, USA Truck, Inc. Defendant removed the case to the U.S. District Court for the District of South Carolina on March 31, 2006.

    The case proceeded to a jury trial beginning on January 22, 2007. At the close of the plaintiff's case, Defendant moved for judgment as a matter of law as to its liability for punitive damages based solely on the acts of its employee. *Transcript* 3-121. The Court denied this motion. *Id.* 3-123. The jury returned a

verdict for $2,000,000.00 in compensatory damages and $1,000,000.00 in punitive damages. *Id.* 4-157. Defendant now renews its motion for judgment notwithstanding the verdict, asking the Court to strike the verdict for punitive damages. Defendant has also moved for a new trial on numerous grounds.

## Motion for Judgment Notwithstanding the Verdict

Federal Rule of Civil Procedure 50 provides that a party may move for judgment as a matter of law once the opposing party has been fully heard on an issue during a jury trial. The moving party must show that a reasonable jury would not have a legally sufficient evidentiary basis to return a verdict for the nonmoving party on that issue. If the motion is not granted, the moving party may renew its motion after the trial as a motion for judgment notwithstanding the verdict. *Id.*

Defendant contends that Restatement (Second) of Torts §909 (1979) prohibits vicarious liability for punitive damages of an agent unless there is a showing of managerial knowledge of the acts. Furthermore, the defendant argues that an award of punitive damages based solely on vicarious liability is unconstitutional.

The rule on vicarious liability for punitive damages is not as universal as Defendant would have the Court believe. 22 Am. Jur. 2d Damages § 590 (2006) acknowledges that

2

> [t]here is a split of authority on the issue of an employer's vicarious
> liability for punitive damages. Some jurisdictions have adopted the
> Restatement Second, Torts formulation. Other authority takes a wider
> view of the vicarious liability of an employer, declining to require some
> act on the part of the employer – such as direct participation,
> knowledge in advance, or ratification – to fairly connect the employer
> with the employee's act.

South Carolina courts have adopted the latter view and do not require knowledge on the part of the employer to impose punitive damages for the acts of the employee. *Brown v. American Tel. & Tel. Co.*, 82 S.C. 173, 63 S.E. 744 (1909); *West v. Service Life & Health Ins. Co.*, 220 S.C. 198, 202, 66 S.E.2d 816, 817 (1951). *Austin v. Specialty Transp. Servs.*, 358 S.C. 298, 318, 594 S.E.2d 867, 877 (2004).

Defendant argues that "South Carolina courts would adopt this Restatement if presented with the opportunity." *Memorandum in Support of JNOV* 2. However, Defendant does not point to any South Carolina decisions that show a trend toward adopting the narrower view of vicarious liability for punitive damages. Where the state law is clear, the Court need not make an *Erie* prediction as to how the South Carolina Supreme Court would decide this issue. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Berk-Cohen Assocs., L.L.C. v. Orkin Exterminating Co.*, 2004 U.S. Dist. LEXIS 6660, 11 (E.D. La.) ("It is generally true that a federal court should not

3

disregard state authority unless convinced by other persuasive data that the state's highest court would decide the matter otherwise").

Defendant cites a number of cases for the proposition that imposing vicarious liability for punitive damages is unconstitutional.  Directly on point is *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991), in which the Supreme Court upheld Alabama's common-law rule allowing punitive damages to be assessed against a corporation when an employee perpetrates fraud in the course of his employment. The Court pointed out that this rule of law was rationally related to the state's interest in deterring fraud, and that "imposing such liability is not fundamentally unfair and does not in itself violate the Due Process Clause."  *Id.* at 15.

While *Haslip* involved allegations of fraud against the defendant's employee, the plaintiff in this case did not allege, nor did the jury find, any fraudulent acts by the defendant's employee.  Despite this distinction, the same analysis applies.  This Court finds that the South Carolina common-law, which allows vicarious liability for punitive damages, is rationally related to the state's interest in deterring reckless, willful, and wanton conduct.  The rule is not fundamentally unfair and does not in and of itself violate the Due Process Clause.

### Motion for New Trial

Federal Rule of Civil Procedure 59 provides that a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which

4

new trials have heretofore been granted in actions at law in the courts of the United States...."  Such motion must be brought within ten days after the entry of the judgment.  Fed. R. Civ. P. 59(b).

Defendant timely filed a motion for new trial on February 5, 2007.  Defendant asserts several grounds for granting the motion.  The Court will address each in turn.

**1. Submission of the Probate Order to the Jury**

Defendant first argues that a new trial is necessary because it was unfairly prejudiced by the Court's allowing the jury to consider as evidence an Edgefield County Probate Court Order naming Natalie Schweers as the temporary conservator of any property Plaintiff might receive.

During the plaintiff's case, Plaintiff attempted to introduce Natalie Schweers as a witness.  Defendant objected on the basis that "[her] duties have to do with after this lawsuit."  *Transcript* 2-254.  Defendant represented to the Court that "Ms. Schweers *will be* appointed conservator for Pernanza Hill...."  *Id.*  (emphasis added).  The Court was thus led to believe that Ms. Schweers had not yet been appointed conservator for Pernanza Hill and that her testimony would be speculative.  In fact, Ms. Schweers had already been appointed as of January 10, 2007.  Under the false belief that Ms. Schweers was not yet the conservator for plaintiff, the Court did not allow her to testify.

After jury deliberations had begun, the jury requested a calculator. Both parties said they had no objections. *Id.* 4-147. Then the jury submitted a written question to the Court: "If no life care plan is chosen, will a trustee be assigned by the Court to manage the award?" *Id.* The plaintiff produced a certified copy of the Probate Court Order appointing Natalie Schweers as conservator. The Court recognized its error in not allowing Natalie Schweers to testify during the plaintiff's case in chief. The Court stated that the Order was entitled to judicial notice and proposed to send it to the jury in response to its question. *Id.* 4-154. Defendant offered to stipulate to the existence of an Order, but objected to it being given to the jury on the grounds that "we didn't see that the trustee had anything to do with this case." *Id.* 4-155. The Court sent the Order to the jury over Defendant's objection. *Id.* The Court wrote a short answer that accompanied the Order: "There is already a Temporary Conservator appointed by the Probate Judge of Edgefield County to wit: Natalie D. Schweers, Sun Bank Trust."

Defendant argues that the Order was inadmissible hearsay evidence and unduly prejudicial, and therefore should have been excluded under Federal Rule of Evidence 403. In particular, Defendant points out sections of the Order which read: "Due to injuries received in the collision, Hill is a person whose property needs to be protected as contemplated by S.C. Code Section 62-5-401(2)…The Court has been shown the 'Pernanza Hill Life Care Plan' prepared by Dr. Jack E. Sink and finds that medical evidence in Hill's case shows that he will be in substantial need of

6

future health care and future vocational and physical rehabilitation services as detailed in the life care plan." Defendant objects that the extent of Plaintiff's injuries and his need for both life care plans was disputed at trial, and that the Order addresses both issues in a manner that is prejudicial to Defendant.

Federal Rule of Civil Procedure 49 requires the Court to "give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue." The evidence at trial was sufficient for the jury to conclude that Plaintiff was mentally retarded and would have difficulty managing money. The alternative life care plans proposed by Dr. Jack Sink included an amount to pay a trust officer to manage any assets the plaintiff obtained from the lawsuit. *Transcript* 2-176. The question from the jury shows a concern about who would manage the assets for the plaintiff if the jury chose not to adopt either of the life care plans. Contrary to Defendant's argument that the Court reaffirmed Dr. Sink's life care plans, in reassuring the jury that its verdict would be protected by a conservator, the Court gave the jury the freedom to deviate from the life care plans if it so chose.

The Court may take judicial notice of a fact when it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201. The fact that the Edgefield County Probate Court appointed Natalie Schweers

as temporary conservator was entitled to judicial notice. *See Elliott v. Papatones*, 143 F.3d 623 (1st Cir. 1998) (judicial notice of state court record as adjudicative fact that debtor was ineligible for Chapter 13 bankruptcy); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236 (4th Cir. 1989) (guilty plea entitled to judicial notice). One could not reasonably dispute that Natalie Schweers had been named conservator for the plaintiff.

While Natalie Schweers' status as conservator is entitled to judicial notice, the findings of fact contained in the Order are not. *See Haavistola v. Community Fire Co.*, 6 F.3d 211, 218 (4th Cir. 1993) (abuse of discretion to take judicial notice of disputed adjudicative facts). Because the Court cannot take judicial notice of the findings of fact contained in the Order, they must be otherwise admissible under the Federal Rules of Evidence.

Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally not admissible unless an exception applies under Rule 803 or a federal statute. The public records exception of Rule 803(8) has been held not to include judicial findings of fact. *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993).

After a review of the record and relevant law, the Court concludes that it was error to admit the Probate Court Order into evidence insofar as it contained findings of fact. While technically not admissible, such admission was harmless based on

8

the totality of the evidence.  An error in the admission of evidence is not grounds for granting a new trial unless it is "inconsistent with substantial justice."  Fed. R. Civ. P. 61.  The Court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."  *Id.*  In order to find that an evidentiary error is harmless, the Court "need only be able to say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors.'"  *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946) and applying its standard to civil cases).  The question is "whether the error itself had substantial influence."  *Kotteakos* at 765.

The Court finds that the Probate Court Order did not substantially influence the judgment.  Defendant cites to *Nipper* for the proposition that an inadmissible court order will always exert substantial influence on the judgment and thus warrant a new trial.  However, the facts of *Nipper* are distinguishable from the present case. In *Nipper*, the plaintiff was allowed to read portions of the findings of fact from a state court order during his direct examination of a witness.  The findings of fact in *Nipper* referred to defendant's "misrepresentations...failure to disclose material information...participation in a civil conspiracy, as well as findings that [co-defendant] had knowingly filed false affidavits."  *Nipper* at 16.  These findings of fact were highly prejudicial in that they labeled both defendants as dishonest people.

9

Thus, in the eyes of the jury, the defendants' credibility as witnesses was harmed and it was more likely than not that defendants were liable for breach of fiduciary duty and fraud – both torts involving dishonesty. The jury was presented this evidence during the plaintiff's case and before any deliberation took place. Despite a limiting instruction, such evidence was certain to substantially influence the jurors and their eventual verdict.

In the case at bar, the Probate Court Order was submitted to the jury *after* their deliberations had begun and *after* they had requested a calculator and asked about how the award would be managed. The reasonable inference is that the jury had determined the liability question in favor of Plaintiff and was considering an award so large that it was concerned about the possibility of mismanagement of the funds. Therefore, it is less likely that the order had a substantial influence on the judgment.

The Probate Court Order does not cast Defendant in a negative light as did the order in *Nipper*. The Order merely references a "pending claim for damages against USA Truck" without any evaluation of the validity of plaintiff's claim. The Order states that a conservator is necessary to manage any funds Hill "*may* receive from his claim for damages" (emphasis added). Thus, the Order was not as prejudicial to the defendant as the one in *Nipper*.

Defendant most strenuously objects to the portions of the Order that reference the extent of Plaintiff's damages and Dr. Sink's life care plan. The Probate

10

Court Order stated that Plaintiff had been "seriously injured" and that Plaintiff was "unable to manage property."  At trial, Defendant challenged Plaintiff's claims that his leg may never heal properly and that Plaintiff sustained permanent brain injuries. *Transcript*  2-112, 3-180.  However, the defendant never disputed that Plaintiff suffered a concussion with brief loss of consciousness, multiple fractures to his left leg, lacerated liver, back strain, a lacerated left hand, a separated shoulder, broken ribs, a subdural hematoma on the left side, and cerebral contusions.  *Id.* 1-146. Therefore, based on the uncontroverted evidence at trial, the Court finds that the Probate Court's characterization of Plaintiff's injuries as "serious" was not unduly prejudicial and was unlikely to substantially influence the judgment.

During the trial, Plaintiff also produced evidence to show that Pernanza Hill suffered from mental retardation before the accident.  This was never disputed by Defendant.  Defendant's expert witness, Dr. Lee, agreed that Plaintiff was mentally retarded before the accident.  *Id.* 3-177.  The jury could reasonably conclude from this undisputed evidence that the plaintiff was incapable of managing his own property.  One may infer that the jury had already reached this conclusion when it asked the Court whether it would appoint someone to manage the award. Therefore, the Probate Court's finding that Plaintiff was unable to manage property was not unduly prejudicial and was unlikely to substantially influence the judgment.

The Probate Court Order states: "The court has been shown the 'Pernanza Hill Life Care Plan' prepared by Dr. Jack E. Sink and finds that medical evidence in Hill's

11

case shows that he will be in substantial need of future health care and future vocational and physical rehabilitation services as detailed in the life care plan." Defendant argues that the Order validates the life care plan, which was sharply disputed at trial, and that the jury was likely to place greater weight on the factual findings of a judge.

The portion of the Probate Court Order regarding Dr. Sink's life care plan is cumulative of other admissible evidence that was offered at trial. Dr. Hawkins is the physician who first treated plaintiff for his injuries. He was tendered as an expert witness in trauma surgery without objection. *Id.* 1-142. Dr. Hawkins testified that he had reviewed Dr. Sink's life care plans and that in his opinion, both plans were reasonable and necessary given Plaintiff's injuries. *Id.* 1-159.

Dr. Tucker treated Plaintiff for his leg injury and was tendered as an expert witness in orthopedic surgery without objection. *Id.* 2-5. Dr. Tucker testified that he had reviewed Dr. Sink's life care plans and that in his opinion, both plans were reasonable and necessary based on Plaintiff's injuries.[1] *Id.* 2-39.

Dr. Macomson treated Plaintiff for head trauma and was tendered as an expert witness in neurosurgery without objection. *Id.* 2-57. Dr. Macomson testified that he had looked at Dr. Sink's life care plans and that in his opinion, both plans

---

[1]

Defendant objected to Dr. Tucker's evaluation of the life care plans because he only treated Plaintiff for injuries to his leg. The Court overruled Defendant's objection. While Dr. Sink's life care plans were not solely based on Plaintiff's leg injury, they did rely to some degree on Plaintiff's limited mobility, of which Dr. Tucker has firsthand knowledge.

were reasonable and necessary based on Plaintiff's injuries. *Id.* 2-78-79. He further explained that a person with an injury like Plaintiff's would have difficulty with memory, speech, and performing routine activities, and that this supported placing him in a residential care facility as detailed in one of the life care plans. *Id.* 2-79-80.

Dr. Bieltz treated Plaintiff for his leg injury most recently and was tendered as an expert witness in orthopedic surgery without objection. *Id.* 2-93. Dr. Bieltz testified that after review of Dr. Sink's life care plans, it was his opinion that both plans were reasonable and necessary for Plaintiff's future care. *Id.* 2-104-105.

Dr. Sink himself was allowed to testify as an expert witness in the fields of life care planning and rehabilitation. Defendant objected that the life care plan was inadmissible because it lacked the proper foundation of medical testimony. The Court overruled this objection.[2] *Id.* 2-149-150. Dr. Sink testified that in his opinion, both life care plans were reasonably necessary for Plaintiff's future care. *Id.* 2-156. Dr. Sink based his opinion on an interview with the plaintiff, Dr. Lee's report, Dr. Tucker's statements, a conversation with Plaintiff's former employer, Dr. Hawkins' responses to his questions, and numerous medical and school records.

The Court finds that Dr. Sink's life care plans were based on sufficient medical evidence. Defendant argues that Dr. Lee, the only neuropsychologist who examined Plaintiff, testified that Plaintiff made "an excellent neuropsychological

---

[2]

Defendant renews his objection to the life care plan in a footnote of its motion for new trial. As detailed more fully in this Order, the medical evidence was sufficient to allow a jury to conclude that either of the life care plans was reasonable and necessary for Plaintiff's future care.

recovery" and therefore the life care plans were inadmissible.  *Memorandum in Support of New Trial* 3.  However, the jury is the ultimate factfinder and was at liberty to disregard Dr. Lee's opinion if not convinced of its truth.  The jury was correctly instructed as follows:

> You are the sole judges of the credibility or "believability" of each witness and the weight to be given to his testimony.  In weighing the testimony of a witness you should consider his relationship to the plaintiff or defendant; his interest, if any, in the outcome of the case; his bias, prejudice, or hostility, if any, toward the plaintiff or defendant; his manner of testifying; his opportunity to observe or acquire knowledge concerning the facts about which he testified; his candor, fairness and intelligence; and the extent to which he has been supported or contradicted by other credible evidence.  You may, in short, accept or reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted and unimpeached.

*Jury Instructions* 8.  Dr. Macomson testified that Plaintiff suffered a head injury that could result in difficulty with memory, speech, and performing routine activities.  *Transcript* 2-79-80. Plaintiff's sister, Ms. Corley, testified that she observed Plaintiff having difficulty with speech and stuttering more than before the accident.  *Id.* 2-141.  Ms. Corley also testified that Plaintiff exhibited mood swings that did not occur before the accident.  *Id.* 2-142.  It was distinctly within the province of the

14

jury to decide whether they believed Dr. Lee's testimony that Plaintiff made an excellent neuropsychological recovery, or whether the testimony of Dr. Macomson and Ms. Corley was more credible.

Defendant assumes that a brain injury is essential to Dr. Sink's life care plans. The jury could reasonably conclude that even absent a brain injury, Plaintiff would need all, or substantially all, of the future care described in one or both plans. Plaintiff suffered extensive injuries that were not controverted at trial which would result in limited mobility and an inability to perform manual labor as he did before the accident. Therefore, Dr. Sink's life care plans and testimony were admissible for the purpose of aiding the jury in determining what future services Plaintiff might require given his injuries.

Admission of the findings of fact regarding Dr. Sink's life care plan in the Probate Court Order, while erroneous, was nevertheless harmless because it was cumulative of other admissible evidence offered at trial. "Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error." *United States v. Seidman*, 156 F.3d 542, 558 (4th Cir. 1998) (concurring opinion) (quoting *Smith v. Firestone Tire & Rubber Co.*, 755 F.2d 129, 132 (8th Cir. 1985)). Four treating physicians testified that the life care plans were reasonable and necessary for Plaintiff's future care.

Defendant argues that the jury was likely to give greater weight to judicial findings of fact. This case is distinguishable from *Nipper*, in which the jury was

15

allowed to consider as evidence judicial findings of fact that the defendants had committed fraud.  Fraud is a legal conclusion and the jury could be expected to accord a judge's finding of fraud with substantial weight.  In this case, however, four treating physicians and an expert life care planner testified that Plaintiff would need future care as detailed in the life care plan.  Whether Plaintiff was in need of that care is a question best answered by those with medical training.  When considering whether Plaintiff needed future services as described in the life care plan, it is likely that the jury gave substantially more weight to the doctors' opinions than to the findings of a judge with no medical training who had never examined the plaintiff.  Therefore, the Court finds that the Probate Court Order's findings of fact on the life care plan did not substantially influence the judgment.

Although it was error to admit the Probate Court Order in its entirety, the Court finds that such admission was harmless because it was cumulative of other admissible evidence and thus not unduly prejudicial to Defendant's case.

## 2. Officer Dye's Statement that Defendant's Driver Was Charged with Driving too Fast for Conditions Was Admissible, and Even If Not Admissible, Was Cured by Cautionary Instructions

Several weeks before trial, Defendant filed a motion *in limine* seeking to exclude evidence that Defendant's driver received a citation in connection with the subject accident.  S.C. Code § 56-5-6160 prohibits evidence of conviction for a

violation of the motor vehicle laws in a civil action.  At the motions hearing, the

parties agreed that this motion should be granted.  *Motions Hearing* 17.

At trial, Plaintiff called Officer Dye, one of two highway patrolmen at the

accident scene, as a witness.  During Plaintiff's direct examination of Officer Dye,

the following exhange took place:

PLAINTIFF COUNSEL: What was his one question he asked you?

OFFICER DYE: After we – this was towards the end of the investigation –

basically, he was charged with driving too fast for conditions.  And –

DEFENSE COUNSEL: Your Honor, I'm going to object to that.

THE COURT: I sustain the objection.  That's generally not admissible in a civil

case, so disregard that.

PLAINTIFF COUNSEL: What did Mr. Oliveras – what was the question that

he asked you?

OFFICER DYE: He wanted to know how it would show up on his driving

record in Florida.

*Transcript* 1-68-69.

After closing arguments, the Court again instructed the jury to disregard any

evidence of motor vehicle citations.  "You are not to consider any evidence that the

driver of the truck was charged with a traffic violation in connection with this

accident.  South Carolina law prohibits this evidence in a civil case, so disregard

such evidence." *Jury Instructions* 23.

17

The Court instructed the jury to disregard Officer Dye's testimony out of an abundance of caution. However, after a close reading of the statute, the Court has determined that Officer Dye's testimony did not violate S.C. Code § 56-5-6160. The statute only forbids evidence of a "conviction." Officer Dye testified that he charged the defendant with driving too fast for conditions, but he did not reveal to the jury the ultimate disposition of the charge. The legislature could have easily worded the statute to read "no evidence of a traffic citation shall be admissible in any court in any civil action." Defendant's interpretation of the statute inserts words that the legislature did not see fit to include.

Evidence of a traffic citation tends to show that the police officer believed a particular driver disobeyed the motor vehicle laws. Evidence of a conviction of the motor vehicle laws is much more prejudicial because (1) if defendant pled guilty or nolo contendere, the jury might interpret this as acknowledgement of his own negligence, and (2) if defendant was found guilty, the jury might give undue weight to this adjudication in determining whether he was negligent.

To the extent Officer Dye's testimony might lead to an inference by the jury that Defendant was convicted of violating the motor vehicle laws, such prejudice was sufficiently cured by the Court's immediate instruction and the further instruction just before jury deliberations. Defendant argues that the prejudice suffered in this case is as great as erroneously allowing a defendant's confession into evidence in a criminal trial, and therefore it cannot be cured. Defendant's

18

comparison is not well taken.  Criminal defendants enjoy many protections that do not apply to the civil defendant.  Furthermore, the evidence allowed in this case was testimony by another witness, and not the defendant's own incriminating statement (although such statement would be admissible as an admission of a party opponent in most cases).   Jurors are ordinarily presumed to obey curative instructions. *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 501 (4th Cir. 2001).  The Court has been shown no reason to doubt this presumption if, in fact, Officer Dye's testimony was unduly prejudicial.

### 3. Evidence of Driver's Logs Was Properly Admitted

Defendant's motion *in limine* requested that the Court exclude Defendant's driver's logs from evidence.  Defendant argued that there was no evidence that fatigue contributed to the accident and that the driver's logs would only serve to prejudice and confuse the jury.

Defendant's driver testified that before the accident, he did not see a vehicle directly in front of him, nor did he observe Plaintiff riding his bicycle on the side of the road.  *Transcript 3-157-158*.  From this the jury could infer that the defendant was inattentive and that its cause was fatigue.  Therefore the driver's log books were relevant to support Plaintiff's claim that Defendant was negligent in driving while tired or inattentive.

19

### 4. The Court Properly Excluded All Prior Accidents

At the hearing on both parties' motions *in limine*, the Court ordered that neither party be allowed to introduce evidence regarding Plaintiff's habit of riding his bicycle on the side of the road. *Motions Hearing* 6.

During direct examination, Plaintiff testified as follows:

PLAINTIFF COUNSEL: Now, before the wreck happened, were you in the grass or were you on the road?

PLAINTIFF: Like I always do, in the grass.

*Transcript* 2-122. Defendant proffered testimony that Plaintiff was riding his bicycle in the road when he was involved in another accident approximately one year prior to the accident at issue. Defendant argues that it was error for the Court not to admit this evidence for impeachment purposes.

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Impeachment of a witness is another permissible purpose for introducing evidence of prior acts. *United States v. Stockton*, 788 F.2d 210, 219 (4th Cir. 1986).

Federal Rule of Evidence 608(b) states that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness'

20

character for truthfulness…may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness concerning the witness' character for truthfulness or untruthfulness."  The proffered testimony was properly excluded because Rule 608(b) forbids the use of extrinsic evidence to prove specific instances of conduct of a witness.

Even if the prior accident could be admitted under Federal Rule of Evidence 608, the proffered testimony must still pass the test of Rule 403.   Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.  Plaintiff would have suffered unfair prejudice by allowing the jury to consider a prior accident in which he was riding his bicycle in the road.  Even though Rule 404 prohibits considering the Plaintiff's past act of driving in the road as evidence that Plaintiff acted in conformity therewith on this occasion, the jury would have been hard pressed not to draw this conclusion.  If the Court had allowed the prior accident into evidence, it would also be obligated to allow Defendant's past accidents into evidence out of fairness to the plaintiff.  This would result in a series of mini-trials that would greatly lengthen the trial and confuse the jury.  The jury was asked to decide the facts of *this* accident.  Expanding the scope of the trial to all of the parties' past accidents would have been improper under Rule 403.

21

**5. The Court Acted Within its Discretion in Declining to Bifurcate the Trial**

At a pre-trial conference, the parties proposed to bifurcate the trial into a liability and actual damages phase, and a punitive damages phase. The Court declined to exercise its discretion in this regard because two trials would not be more convenient, expedite the matter, or avoid prejudice. *Motions Hearing* 41-42.

Federal Rule of Civil Procedure 42(b) allows a court to order separate trials when "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Whether to bifurcate a trial is a matter within the sound discretion of the trial judge. *Bedser v. Horton Motor Lines, Inc.*, 122 F.2d 406, 407 (4th Cir. 1941).

Defendant objects that allowing the jury to hear evidence of its net worth before a finding of recklessness was prejudicial. The Court instructed the jury that "[t]he fact that the defendant is a corporation must not prejudice you in your deliberations or in your verdict. You may not discriminate between corporations and natural individuals. Both are persons in the eyes of the law, and both are entitled to the same fair and impartial consideration and to justice by the same legal standards." *Jury Instructions* 3. "Evidence has been presented regarding the financial status of the defendant. This evidence is to be used ONLY if you determine that punitive damages against the defendant are justified, and as one of several factors in deciding the amount of punitive damages. It would be improper

for you to consider the financial status of the defendant for any other purpose." *Id.* 11.

The Court finds that any potential prejudice was sufficiently cured by its instructions to the jury. Therefore, the Court's refusal to bifurcate does not warrant a new trial.

### 6. The Court Gave the Requested Instruction on Duties of Bicycle Riders

Defendant objects that the Court failed to charge the jury with S.C. Code § 56-5-3420, which reads as follows: "Every person riding a bicycle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this chapter, except as to special regulations in this article and except as to those provisions of this chapter which by their nature can have no application." This instruction was substantially charged. "A person riding a bicycle is granted all of the rights and is subject to all of the duties applicable to drivers of other vehicles." *Jury Instructions* 3.

### 7. Omission of Income Tax Instruction Did Not Prejudice Defendant

Defendant requested an instruction that a damages award would not be subject to income taxes and that the jury should not take this into account in determining any award. The Court declined to give this instruction because no evidence was offered at trial regarding how much tax, if any, the plaintiff would be

required to pay out of a damages award.[3]  Therefore, the likelihood was small that the jury would consider income tax consequences of the plaintiff's award.

*Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490 (1980) is not applicable to this case.  The *Norfolk* plaintiff brought a claim based on the Federal Employers' Liability Act (FELA) and federal law applied.  In this diversity action, the substantive law of the state of South Carolina governs.  *See Hansen v. Johns-Manville Products Corp.*, 734 F.2d 1036, 1045 (5th Cir. 1984) (holding that when a claim for damages is brought under Texas law, Texas law determines whether taxability instruction is warranted).  Defendant has not cited to any South Carolina case law that supports its proposed instruction, and the Court is unable to locate any relevant precedent.

While Plaintiff's actual damages are not taxable, punitive damages obtained in a personal injury suit are still subject to income taxes.  26 U.S.C. §104(a)(2); *O'Gilvie v. United States*, 519 U.S. 79 (1996).  The jury instruction Defendant submitted made no such distinction.  Giving a more complicated instruction would have only served to confuse the jury and distract them from the issues in this case.

Given the high potential for confusing the jury balanced against the marginal value of this instruction, and absent any South Carolina precedent on this issue, the Court finds that declining to give this instruction did not prejudice Defendant.

---

[3]

Plaintiff's economist, Dr. Oliver G. Wood, Jr., testified on cross-examination that the income tax on plaintiff's future earnings would have been $14,528, but this is a separate issue from the income tax paid on plaintiff's damages award.

24

**8. The Evidence Mandated an Instruction on the Duty to Render Aid**

The Court gave the following instruction:

> South Carolina Code Section 56-5-1230 Duty to give information and
> render aid.  The driver of any vehicle involved in an accident resulting
> in injury to or death of any person or damage to any vehicle which is
> driven or attended by any person shall give his name, address and the
> registration number of the vehicle he is driving and shall upon request
> and if available exhibit his driver's license to the person struck or the
> driver or occupant of or person attending any vehicle collided with and
> shall render to any person injured in such accident reasonable
> assistance, including the carrying or making arrangements for the
> carrying of such person to a physician, surgeon or hospital for medical
> or surgical treatment if it is apparent that such treatment is necessary
> or if such carrying is requested by the injured person.

*Jury Instructions* 20.

Sufficient evidence was presented from which the jury could conclude that
Defendant's drivers failed to provide reasonable assistance to the injured plaintiff.
Dominic Alcantar testified that neither of Defendant's drivers called 911 or other
assistance for Plaintiff, although they did call their supervisors at USA Truck.  Both
of Defendant's drivers testified that they did nothing to assist the injured plaintiff
on the side of the road.  *Transcript* 3-145, 3-150.  Defendant's drivers explained

25

that when they arrived at the scene, someone was already treating Plaintiff's injuries. *Id.* 3-146, 3-150. It is for the jury – not the Court – to decide whether Defendant's drivers provided reasonable assistance given all of the circumstances.

Defendant also objects that its failure to assist Plaintiff was not a cause of his injuries. Again, this was a question for the jury. A reasonable jury could find that Plaintiff's pain and suffering were exacerbated by any delay in receiving treatment as a result of Defendant's failure to call 911 for assistance. The instruction on the duty to render aid was proper.

Defendant correctly notes that no evidence was presented that Defendant failed to give information after the accident. The Court charged the entire statute when only the latter portion applied to these facts. However, the Court finds that even if such instruction constituted error, it was nevertheless harmless because it did not substantially influence the verdict.

### 9. Reprimand of Bill Kluge Was Properly Admitted as Evidence

During direct examination of Defendant's accident reconstruction expert, Bill Kluge, he stated that his North Carolina license went inactive due to an administrative error and was later reinstated. *Transcript* 3-42. On cross-examination, Plaintiff questioned Mr. Kluge about the reprimand from the North Carolina Board of Engineers and offered a certified copy of the reprimand into

26

evidence.  *Id.* 3-87.  The Court admitted the reprimand into evidence over Defendant's objection that it had not seen the reprimand before trial.  *Id.* 3-99.

Plaintiff was under no obligation to disclose evidence that would be used "solely for impeachment" purposes.  Fed. R. Civ. P. 26(a)(3); *Jeffries v. Pacific Indem. Co.*, 1997 U.S. App. LEXIS 35513, at *6 (4th Cir.) (unpublished opinion); *Newsome v. Penske Truck Leasing Corp.*, 437 F.Supp.2d 431, 434 (D. Md. 2006) ("evidence withheld as *solely for impeachment* evidence must be produced: (1) whenever the evidence also has a substantive purpose, and (2) if it would be responsive to a specific discovery request" (emphasis in original)).  Mr. Kluge's reprimand was offered in an attempt to attack his credibility, and was not relevant to any of the substantive issues the jury would be asked to decide.  Therefore, the reprimand was solely impeachment evidence, and the Rules of Civil Procedure did not require its disclosure.

Defendant argues that the reprimand was extremely prejudicial and should not have been allowed under Federal Rule of Evidence 608(b).  This basis for objection was not articulated at trial and therefore cannot be considered when raised for the first time in Defendant's Motion for New Trial.  In order to preserve an error for review, a party must make known to the court "the party's objection to the action of the court and the grounds therefor."  Fed. R. Civ. P. 46.

The purpose of Rule 46 is to inform the trial judge of possible errors so that he may have an opportunity to consider his ruling and make

changes when advisable.  It is therefore the general rule that issues not raised and preserved below will not be considered on appeal.  In addition, 'it is fundamental that where an objection is specified it is deemed to be limited to the ground or grounds specified and it does not cover other grounds not specified.'

*Brookhaven Landscaping & Grading Co. v. J.F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir. 1982) (citations omitted).  The sole basis for excluding the reprimand articulated at trial was that Plaintiff did not disclose it during discovery. Defendant cannot now rely on additional grounds for objection that were not made known to the Court at the time of its ruling.

### 10. Defendant Was Not Prejudiced by the Court's Remarks and Any Potential Prejudice Was Cured by Cautionary Instructions

During Plaintiff's cross-examination of Serafin Oliveras, Plaintiff asked questions about the driver's log books.  Mr. Oliveras requested the original log books.  Plaintiff responded that he had only been provided with copies.  Upon re-direct, Defendant asked if he could show Mr. Oliveras the original log books. Plaintiff objected on the basis that the originals were not provided during discovery. The following exchange took place:

THE COURT: Why didn't you give it to him when he requested it?

DEFENSE COUNSEL: We gave it to him, your Honor, at your –

PLAINTIFF'S COUNSEL: Motion to Compel hearing.

28

THE COURT: Well, that was after he made the motion and I ordered that you turn it over.

*Transcript* 3-160.  Shortly after this exchange, the Court explained the situation to the jury as follows:

THE COURT: [to the witness] You may be excused. [to the jury]  Ladies and gentlemen, to explain to you about the log book, under the law the plaintiff in this case was entitled to all of those log books.  They claimed there were too many.  They came into court and I think I ordered them to cut it down to 30 days or something like that.  Was it 30 days?

PLAINTIFF'S COUNSEL: Eight days.

THE COURT: Eight days?

PLAINTIFF'S COUNSEL: Yes, sir.

THE COURT: And ordered them to give them to them.  I don't know exactly when that was, but I ordered them in this courtroom to give it to them.  And did they give it to you?

PLAINTIFF'S COUNSEL: After you ordered it, yes, sir, but not the original. They're copies.

THE COURT: They gave you copies?

PLAINTIFF'S COUNSEL: Yeah, I never saw that book he just pulled out.

THE COURT: All right, so that was a procedural matter, what goes on.  All right, any objections?

29

*Id.* 3-162-163. Defendant objected and the Court ordered a recess to give Defendant an opportunity to explain the discovery dispute outside the hearing of the jury. After reviewing the transcript, the Court is of the opinion that none of its comments prejudiced the defendant. The Court merely recited the fact that Defendant supplied Plaintiff with copies of the log books pursuant to an order of the Court. Even though the Court made no prejudicial comment, the Court gave a cautionary instruction that was substantially the same as one requested by Defendant.[4]

> At one point during the trial, the Court suggested that the defendant failed to comply fully with a discovery request. Upon further review of the matter, the Court is satisfied that defendant did in fact comply with the discovery request. Therefore, you should not infer any wrongdoing on the part of the defendant in this regard.

*Id.* 11-12. The Court also instructed the jury as follows:

> Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

---

[4] The instruction requested by Defendant read as follows: "Before the last break, there was a statement by the Court suggesting that USA Truck failed to comply with discovery rules. After reviewing the matter, I must correct that statement. USA Truck fully complied with the plaintiff's discovery requests and this Court's orders. You should disregard any idea I gave you to the contrary."

*Id.* 6.  Therefore, although the Court's comments were not prejudicial, any potential for prejudice was sufficiently cured by the immediate cautionary instruction, followed by further instructions at the end of trial.

Defendant also objects to other comments made by the Court during the course of the trial; specifically, that Defendant's counsel were "breaking all the rules" and that "[y]ou think he's entitled to zero." *Transcript* 1-185.  The Supreme Court has held  that

> judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."

*Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis in original).  The Court also noted that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality.  *Id.*  Even if such bias is established, the party claiming error must show that the judge's comments "somehow affected the outlook or the deliberations of the jurors."  *Rowsey v. Lee*, 327 F.3d 335, 342 (4th Cir. 2003).

The jurors were not likely to take the Court's comments into consideration when deciding this case.  The Court's statement that Defendant thought Plaintiff

was entitled to zero is factually correct and undisputed. Defendant contested liability. Had the jury accepted its argument, Plaintiff would have received nothing. The Court's statement that Defendant was breaking all the rules was in reference to an impermissible line of questioning. Defendant asked a lay witness whether Plaintiff had brain damage and whether Plaintiff was disabled. The Court interrupted because "he [the witness] is not a doctor. He can't testify on the disability of anybody." *Transcript* 1-184. Thus, the jury was unlikely to place any significance on these comments during its deliberations.

**11. Evidence of Witness Tampering Was Properly Admitted**

In the week before trial, several witnesses who were under Plaintiff's subpoena to appear for trial the following Monday also received subpoenas from Defendant. All of these witnesses planned to testify favorably for the plaintiff and had little to offer that would help Defendant's case. For instance, Ken Richardson was an accident reconstruction expert whose report concluded that Defendant drove off the road to cause the collision. Defendant also subpoenaed the two highway troopers who responded to the accident scene. Defendant did not call any of these witnesses during its case in chief.

After serving the subpoenas (and in the case of Ken Richardson, before any subpoena had been served), defense counsel contacted the witnesses and informed them that they would not need to be present on Monday (the first day of trial), but

that they may be needed later in the week. Confused by the receipt of two subpoenas and contradictory instructions, the witnesses called Plaintiff's counsel. Plaintiff's counsel contacted the defense in an attempt to resolve the matter. When this effort failed, Plaintiff filed a motion for sanctions.

Defendant argued that it instructed witnesses regarding Defendant's subpoena but that it never advised a witness that he should not obey Plaintiff's subpoena. Defendant claims that any confusion experienced by the witnesses is regrettable but unintentional.

Clients must be held accountable for the acts and omissions of their attorneys. *Pioneer Inv. Serv. v. Brunswick Assocs. P'ship*, 507 U.S. 380, 396 (1993). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (citations omitted).

In his motion for sanctions, Plaintiff presented sufficient evidence to call into question the defendant's motives in subpoenaing adverse witnesses and telling them they did not need to come to court on Monday. Therefore the Court allowed the jury to hear this testimony because it was relevant to Defendant's motive and state of mind. If the jury determined that Defendant intentionally confused or mislead the chief witnesses for the plaintiff in an attempt to harm the plaintiff by delaying or

33

breaking up his presentation of the case, then the jury could take this into consideration on the issue of punitive damages.  "It is indeed manifest that subsequent conduct may tend to throw light upon the immediate occurrence under investigation, especially where mental attitudes are important, such as a conscious failure to observe due care, and the like." *Hallman v. Cushman*, 196 S.C. 402, 407 (1941).

Defendant was given ample opportunity to cross-examine the witnesses who felt confused or mislead, and so Defendant suffered no unfair prejudice.  In fact, Defendant withdrew its objection as to Trooper Mather's testimony when he testified that after the phone call from defense counsel, he understood he was still subject to Plaintiff's subpoena for Monday.  *Transcript* 1-110.

Defendant also objects that the witnesses gave "inadmissible opinion and hearsay testimony."  *Defendant's Memo* 11.  After a careful review of the record, the Court finds only one instance when Defendant raised an objection on either of these grounds.  Defendant objected on hearsay grounds when Ken Richardson testified that Defendant called his secretary and told her to pass along the message that Mr. Richardson would not be needed in court on Monday.  This was hearsay and should have been excluded.  However, such admission did not prejudice Defendant because it was cumulative of other witnesses' testimony and Defendant's attorney admitted to the substance of this conversation with Mr. Richardson's secretary.  *Transcript* 3-220.

34

It was uncontroverted that defense counsel subpoenaed several adverse witnesses and then called to tell them they need not show up for trial on Monday. Whether this was an innocent mistake or part of a more sinister plan to delay or break up the presentation of Plaintiff's case was a question for the jury in determining Defendant's state of mind.

**12. A Spoliation Charge Was Warranted by the Evidence**

Jerry Webb was the second person to arrive at the accident scene. He testified that upon his arrival, the mirror on the passenger side of the truck was damaged and a piece of plastic grocery bag was hanging from the mirror. Mr. Webb was shown a picture taken later in the day which depicted the grocery bag wrapped around the front bumper of the truck. He testified that this was not where the bag had been when he first arrived at the scene. *Transcript* 1-59-60. Both of Defendant's drivers denied having moved the bag from the mirror to the bumper. *Id.* 3-132, 3-147. The location of the bag was evidence of where the bicycle collided with the tractor trailer and thus potential evidence of Defendant's liability. The jury could reasonably infer from the evidence that, contrary to their denials, defendant's drivers moved the bag from the side mirror to the bumper.

Jerry Webb also testified that he observed a bicycle tire in the grassy area on the shoulder of the road. He was shown a photograph the defendant had taken of the tire laying close to the fog line of the road. He testified that this photograph did

35

not accurately depict where he saw the tire when he arrived at the scene. *Id.* 1-62.

Trooper Mather testified that he observed the tire in the ditch and marked it with

orange paint for later reference.  He said that the tire was not resting next to the

road as depicted in defendant's photograph. *Id.* 1-97.  The location of the tire was

relevant to where the collision occurred.   From this evidence, the jury could

reasonably infer that Defendant or his agent moved the tire closer to the road in an

attempt to manipulate the evidence in a manner that would favor Defendant's theory

of the case.

The Court found that in light of this evidence, the following instruction was

warranted:

> When a party fails to preserve material evidence for trial, it is for you
>
> to determine whether the party has offered a satisfactory explanation
>
> for that failure.  If you find the explanation unsatisfactory, you are
>
> permitted – but not required – to draw the inference that the evidence
>
> would have been unfavorable to the party's claim.

*Jury Instructions* 9.  A court has the inherent power to impose sanctions when

evidence is destroyed or materially altered or not preserved for another's use as

evidence in pending or reasonably foreseeable litigation. *Silvestri v. GMC*, 271 F.3d

583, 590 (4th Cir. 2001).  Bad faith on the part of the offending party need not be

shown to justify a spoliation charge.  *Vodusek v. Bayliner Marine Corp.*, 71 F.3d

148, 156 (4th Cir. 1995).  The trial court may "pursue a wide range of responses

36

both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Id.*

Rather than decide the issue of spoliation itself, the Court provided the jury with appropriate guidelines that allowed it to draw inferences against *either* party for its failure to preserve material evidence for trial. Therefore the defendant was not prejudiced by this instruction.

### 13. Defendant's Remaining Points of Error Have Been Addressed

Defendant's claim that vicarious punitive damages should not be allowed in South Carolina has already been denied. *See* discussion *supra* pp. 2-4. On April 23, 2007, this Court made findings on the record pursuant to *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). The Court found that a punitive damages award of $1,000,000 for an actual damages award of $2,000,000 was not excessive so as to violate Defendant's due process rights. A full explanation of the Court's reasoning is contained in the record, and so it is not repeated here.

IT IS THEREFORE ORDERED that Defendant's Motion for Judgment Notwithstanding the Verdict is DENIED. IT IS FURTHER ORDERED that Defendant's Motion for New Trial is DENIED.

IT IS SO ORDERED.

37

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

May 30, 2007

Anderson, South Carolina